UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS KEITH,

    Plaintiff,

v.                                                                                     Case No. 10-12026
                                                                                       Hon. Lawrence P. Zatkoff
OAKLAND COUNTY and OAKLAND
COUNTY PARKS & RECREATION,

    Defendants.
_____/

**<u>OPINION AND ORDER</u>**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 1, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment [dkt 12]; and Plaintiff's Ex Parte Motion for Leave to File Excess Pages [dkt 31] and Motion to Strike Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment [dkt 36]. The parties have fully briefed the motions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED, Plaintiff's Ex Parte Motion for Leave to File Excess Pages is GRANTED, and Plaintiff's Motion to Strike Defendants' Reply is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

Plaintiff, Nicholas Keith, is deaf in both ears and has a surgically installed cochlear implant.[1] Plaintiff also has limited ability to speak verbally. He communicates with sign language and non-verbal gestures. Despite this, he applied for a position as a lifeguard with Oakland County's Parks and Recreation, a division of Oakland County (collectively, the "Defendants"). After Defendants denied him employment as a lifeguard in 2007 and as a lifeguard and park attendant in 2008, Plaintiff filed this action claiming that Defendants discriminated against him due to his disability pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*.

### A. FACTUAL BACKGROUND

Plaintiff showed an interest in becoming a lifeguard in 2005. In 2006, Plaintiff enrolled in Defendants' junior lifeguard training, which was held at Defendants' facility. The class introduced participants to performing the basic duties of a lifeguard. Defendants' provided Plaintiff an interpreter/signer. According to Plaintiff, the interpreter/signer did not assist him in completing the life-saving tasks, but instead only communicated the words to Plaintiff that were spoken in the class.

After completing the junior lifeguard training, Defendants were aware of Plaintiff's interest in lifeguard training and employment as a lifeguard. Defendants' recreation specialist, Katherine Stavale, contacted an aquatics safety and operations consulting firm, Jeff Ellis and Associates ("Ellis and Associates"), regarding deaf individuals working as lifeguards. Richard Carroll, an employee

---

[1] According to Plaintiff, a cochlear implant is unlike a hearing aid because it requires an additional external sound transmitter, which detects sound and transmits it to the brain. Allegedly, Plaintiff can hear noises such as people calling for him, alarms, and whistles with the implant and external sound transmitter.

of Ellis and Associates, corresponded through e-mail with Stavale regarding any modifications or requirements that a facility must have to train a deaf individual as a lifeguard.

In February of 2007, Plaintiff enrolled in Defendants' lifeguard training course to become a certified lifeguard. During the process, Plaintiff applied for a position as a lifeguard at the Waterford Oaks Water Park, which is owned and operated by Defendants. Defendants hired an interpreter/signer for Plaintiff during his lifeguard training. In May of 2007, Plaintiff completed the nine-day training with the provided interpreter/signer. Plaintiff was issued a license, which entitled him to perform lifeguarding services at Defendants' facility, by head lifeguard and instructor, Meghan Ferdon. On May 15, 2007, Stavale sent an e-mail to her. She notified them that Plaintiff had successfully completed his training, and that he had requested the accommodation of an interpreter/signer's presence for further classroom instruction and staff meetings to work as a lifeguard at Defendants' facility. Stavale then notified Plaintiff by e-mail of the decision to extend an offer of part-time employment as a lifeguard to Plaintiff. Plaintiff's employment was conditioned on passing a pre-employment physical.

At the direction of Defendants, Dr. Paul Work conducted a pre-employment physical on Plaintiff. Plaintiff was accompanied during parts of the examination by his mother, Nancy Keith. Dr. Work found: (1) Plaintiff was deaf and incapable of hearing; (2) Plaintiff could not function as a lifeguard without assistance; and (3) Plaintiff was able to be employed if "constantly accommodated." Dr. Work concluded, "I cannot and will not say that [Plaintiff] can be safely accommodated so I am placing him in the category of 'approved with communications' but I have doubts that those accommodations will always be adequate."

After receipt of Dr. Work's examination of Plaintiff, Defendants discussed the qualifications

required to be a lifeguard and the implications to safety of employing Plaintiff. Defendants contacted Ellis and Associates and spoke with Wayne Crokus. Crokus was an employee of Ellis and Associates. Defendants allege, based on the information in the pre-employment physical, the statements of Dr. Work, the statements from Ellis and Associates, and the information of Defendants' personnel, that Plaintiff's employment offer would be rescinded. On July 3, 2007, Defendants wrote Plaintiff, rescinding the conditional offer of employment.

Following Defendants' rescission of their conditional offer, Stavale received notification that a discrimination charge had been filed with the Michigan Department of Civil Rights ("MDCR") against Dr. Work on Plaintiff's behalf, alleging discrimination in violation of the ADA. On September 18, 2007, Keith then filed a charge of discrimination with the MDCR and the United States Equal Employment Opportunity Commission ("EEOC") against Defendants on behalf of Plaintiff due to Defendants' refusal to hire Plaintiff.

In February of 2008, Plaintiff applied for an open lifeguard position and for an open park attendant position with Defendants. Defendants did not hire Plaintiff for either position. As to the lifeguard position, Defendants relied on their 2007 assessment of Plaintiff and determined his deafness prohibited him from performing the essential functions of a wave-pool lifeguard. As to the park attendant position, it appears Plaintiff's application was never selected during the hiring process. According to Defendants, a second discrimination charge then was filed with the MDCR and EEOC against Defendants for not hiring Plaintiff as a lifeguard or as a park attendant. Ultimately, the discrimination charges were dismissed because Plaintiff chose to file an action with the courts.

**B. PROCEDURAL BACKGROUND**

On May 19, 2010, Plaintiff filed his three-count Complaint, asserting claims against Defendants under federal and state law. On June 10, 2010, the Court dismissed Plaintiff's state-law claim—Count II. As to Plaintiff's remaining federal claims, in Count I, Plaintiff alleges violations under the ADA. In Count III, Plaintiff alleges violations under the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*. Specifically, Plaintiff alleges that Defendants were aware of his disability and rescinded their employment offer due to his disability without assessing whether Plaintiff could perform the essential job functions of a lifeguard with or without reasonable accommodations. Plaintiff also alleges that Defendants discriminated against him when Defendants did not hire him as a lifeguard or park attendant in 2008. Plaintiff seeks economic damages, as well as equitable relief, including reinstatement of Plaintiff's employment and that Defendants' provide Plaintiff reasonable accommodations. On February 23, 2011, before discovery had closed, Defendants filed the instant motion for summary judgment.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;

> or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

**A. PLAINTIFF'S MOTIONS**

Plaintiff filed two motions in response to Defendants' Motion for Summary Judgment. Plaintiff first filed a Motion for Leave to File Excess Pages with his response brief. For the reasons stated in that motion and brief regarding the novelty of Plaintiff's ADA claim and the factual

circumstances surrounding this case, the Court GRANTS Plaintiff's Motion for Leave to Exceed File Excess Pages.

Plaintiff also filed a Motion to Strike Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment. Plaintiff essentially asserts that Defendants' reply should be stricken because the reply includes a new affidavit of Michael Oostman and additional argument based on that affidavit. Plaintiff cites to numerous cases for the proposition that Defendants are not permitted to raise new arguments or new evidence for the first time in a reply brief. Defendants argue that Plaintiff misconstrues the legal precedent cited in his motion. Defendants further explain that Plaintiff's legal precedent pertains to raising a new issue on appeal, and that the Sixth Circuit has found that any issues raised for the first time in an appellate reply brief are waived. Defendants assert such legal precedent does not apply to Michael Oostman's affidavit attached to their reply brief. As the Sixth Circuit has explained,

> Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (citation omitted). In reviewing Defendants' reply brief, the Court finds that Defendants' reply brief does not raise any new issue that they did not already present in their Motion for Summary Judgment. To that extent, the Court declines to strike Defendants' reply brief. Further, although the legal precedent cited by Plaintiff involves a party raising new issues and not evidence, the Court finds that the rationale applies in equal force to Defendants' newly raised evidence. Thus, as a matter of litigation fairness and

7

procedure, the Court declines to consider the portions of Defendants' reply brief that rely on the newly attached affidavit of Michael Oostman. As such, Plaintiff's Motion to Strike Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## B. PLAINTIFF'S ADA CLAIMS (COUNT I)

The ADA mandates that "no covered entity shall discriminate against a qualified individual with a disability . . . ." 42 U.S.C. § 12112(a). A plaintiff seeking relief under the ADA must establish the following:

> (1) he is a disabled person within the meaning of the ADA;
>
> (2) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and
>
> (3) he suffered an adverse employment action because of his disability.

*See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for its action. *Id.* If the employer provides a legitimate, non-discriminatory reason, the burden shifts back to the employee to show that the employer's proffered reason is pretextual. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). An employee can demonstrate pretext by showing that the stated reasons have no basis in fact, were not the actual reasons, or that they were insufficient to explain the employer's actions. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).

### 1. *Prima Facie* Case of Discrimination with respect to Wave-Pool Lifeguard

The contention between the parties in the instant motion is whether Plaintiff can prove the

second element of his *prima facie* case, that is, he is otherwise qualified to perform the essential functions of his job and thus survive summary judgment. Defendants assert that Plaintiff has not shown that he can perform the essential functions of the job as a wave-pool lifeguard. Defendants rely on Stavale's affidavit and its Waterpark Staff Manual as references of the essential functions of a wave-pool lifeguard. In short, Defendants contend that because a wave-pool lifeguard needs to communicate with other lifeguards, patrons, emergency personnel, and injured persons on a regular basis, Plaintiff's inability to hear and verbally speak means he cannot perform these essential functions. Defendants further contend that hiring an additional lifeguard who is an interpreter/signer is an unreasonable accommodation. Defendants further rebut Plaintiff's evidence that indicates deaf individuals are capable of being lifeguards by arguing that the essential functions of Defendants' wave-pool lifeguard position is not limited to only lifesaving duties.

In response, Plaintiff asserts that he is qualified to perform the essential functions as a wave-pool lifeguard without accommodation or if accommodated with an interpreter/signer during staff meetings or further classroom instruction. Plaintiff also argues that summary judgment must be denied because Defendants' reliance on Dr. Work's pre-employment physical was improper due to his failure to make an individualized inquiry as to Plaintiff's disability. Plaintiff further argues that Defendants also failed to engage in the mandatory individualized inquiry with Plaintiff. Plaintiff cites to *Holiday v. City of Chattanooga,* 206 F.3d 637 (6th Cir. 2000), to support his argument.

### *a) Individualized Inquiry*

The Court first addresses Plaintiff's argument that Dr. Work and Defendants failed to make an individual determination of whether Plaintiff's deafness impeded his ability to perform as a

wave-pool lifeguard.

>As stated in *Holiday*,
>
>> The ADA mandates an individualized inquiry in determining whether an employee's disability or other condition disqualifies him from a particular position. In order to properly evaluate a job applicant on the basis of his personal characteristics, the employer must conduct an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on that individual's ability to perform the job in question.

206 F.3d at 643.

As to Dr. Work, in reviewing Dr. Work's examination notes, he stated, "Examination of [Plaintiff] demonstrates a deaf young man who is physically sound except for his deafness. . . . I do not believe he can function independently as a lifeguard." Dr. Work's examination notes fail to indicate whether Plaintiff's condition actually impedes his ability to perform as a wave-pool lifeguard. In reviewing the record, no evidence indicates that Dr. Work based his conclusion on any fact other than Plaintiff's deafness. As Keith indicated in her affidavit while she was with Plaintiff during the pre-employment physical, Dr. Work merely entered the examination room, reviewed Plaintiff's medical file, and stated, "He's deaf; he can't be a lifeguard." Keith then inquired whether Dr. Work was basing his decision solely on Plaintiff's deafness. Dr. Work stated that was the case. Dr. Work apparently concluded his examination at that point and failed to determine if Plaintiff could perform the essential functions of the job, either with or without reasonable accommodation, due to his deafness. More significant to Dr. Work's cursory examination is the fact that he has no education, training, or experience in assessing the ability of a deaf individual to work as a lifeguard. Thus, the Court finds that Dr. Work failed to make an individualized inquiry as to whether Plaintiff's disability disqualified him from being a wave-pool lifeguard.

Notwithstanding Dr. Work's cursory examination, Plaintiff's argument that Defendants failed to make an individualized determination is unsupported by the evidence. Plaintiff's argument fails to take into account the 2006 junior lifeguard training and 2007 lifeguard training, in which Defendants were able to monitor and observe Plaintiff as a possible lifeguard. During both lifeguard trainings, Defendants accommodated Plaintiff with an interpreter/signer. After Plaintiff's completion of the 2007 lifeguard training, Defendants determined from Dr. Work's examination report, Ellis and Associates's advice, and Defendants' employees' combined knowledge that no offer of employment would be extended. Although Defendants did not communicate directly with Plaintiff during this time, Defendants had already observed Plaintiff during the 2006 junior lifeguard training and the 2007 lifeguard training. Further, Defendants' employee, Stavale, consulted with Ellis and Associates's employee, Crokus. These communications were accomplished through a jointly-created electronic document that Stavale and Crokus e-mailed back and forth. The document indicates Stavale's concerns if Plaintiff were to work as a wave-pool lifeguard along with suggested modifications of the position. Crokus then responded with additional statements or concerns regarding Stavale's statements. The entire document specifically focuses on whether Plaintiff was capable of performing the functions of a wave-pool lifeguard. As such, the Court finds that Defendants conducted an individual determination of whether Plaintiff could perform the essential functions of a wave-pool lifeguard due to his disability.

### *B) Otherwise Qualified as a Wave-pool Lifeguard*

In assessing whether Plaintiff is "otherwise qualified" within the meaning of the ADA, the Court must analyze whether Plaintiff was capable of working as a wave-pool lifeguard with or without a reasonable accommodation. Plaintiff fails to show he is "otherwise qualified" without any

11

accommodation. As such, the Court will analyze whether he is "otherwise qualified" with reasonable accommodations. Under the ADA, a covered entity must make "reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). It is Plaintiff's burden to first show that a proposed accommodation is objectively reasonable. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996). The burden then shifts to Defendant to show that the accommodation would "impose an undue hardship." 42 U.S.C. § 12112(5)(a); *see also Monette*, 90 F.3d at 1183–84.

In this case, Plaintiff requested the accommodation of an interpreter during staff meetings and further classroom instruction. Plaintiff also asserts in his response to Defendants' instant motion that had Defendants notified Plaintiff of Defendants' concerns regarding the communication duties of a wave-pool lifeguard, he would have been able to inform Defendants of his cochlear implant. According to Plaintiff, his implant would allow him to hear people yell, whistles, and other emergency sounds. The Court notes that Plaintiff does not challenge the essential functions of a wave-pool lifeguard as delineated in the Water Park Staff Manual and as stated by Stavale. Based on these essential functions, Defendants' wave-pool lifeguards must perform life-saving duties, as well as communicate with other lifeguards, patrons, emergency personnel, and injured persons. After reviewing the record and considering the parties' arguments, the Court finds as a matter of law that Plaintiff has presented insufficient evidence that would allow a reasonable jury to conclude that Plaintiff may be reasonably accommodated to perform the essential duties of a wave-pool lifeguard at Defendants' facility.

Plaintiff argues that he is capable of the essential functions of a wave-pool lifeguard with respect to the life-saving duties. Defendants do not appear to dispute this. Plaintiff has completed

the 2006 junior lifeguard training and the 2007 lifeguard training. Matthew Pardy, an employee of Defendants and lead instructor of the 2007 lifeguard training program, describes the tasks that Plaintiff had to complete. This included swim testing, teaching how to scan the water for distressed swimmers, performing various types of saves, as well as testing Plaintiff's ability to perform CPR. Carroll, an employee of Ellis & Associates, also testified during his deposition that if Plaintiff successfully completed the 2007 lifeguard training program and earned his license from Defendants, he had demonstrated his ability to perform all the functions of a lifeguard. Plaintiff has also attached the affidavit of Anita Marchitelli, a certified lifeguard training instructor and professor at Gallaudet University. Marchitelli states that she has certified over 1000 deaf lifeguards through the American Red Cross programs. She is also unaware in her 37 year tenure with Gallaudet University of a failure of any deaf lifeguard to appropriately respond to a victim in a distressed or related incident. Thus, it appears Plaintiff is "otherwise qualified" to complete the life-saving duties of a lifeguard.

Notwithstanding that, Plaintiff has not shown that he is capable of the essential functions that pertain to communicating with patrons, emergency personnel, and other lifeguards with reasonable accommodations. While Plaintiff's passing of the 2006 junior lifeguard training and 2007 lifeguard training exemplify his ability to perform life-saving functions, he completed this program with an interpreter/signer. The interpreter/signer's responsibility was to communicate any spoken words to Plaintiff during the training. Although Plaintiff only requested an interpreter/signer during staff meetings and further classroom instruction once employed by Defendants, Plaintiff has provided insufficient evidence that he would be able to perform the communication duties of a wave-pool lifeguard without the accommodation of an interpreter/signer during his entire shift. Nonetheless, Plaintiff even fails to show that providing Plaintiff an interpreter/signer during only classroom

13

instruction and staff meetings is objectively reasonable. *See Steward v. Daimler Chrysler Corp.*, 533 F. Supp. 2d 717, 722–23 (E.D. Mich. 2008) (finding it unreasonable to accommodate an individual by requiring an employer to hire an additional person to assist the individual in his or her job duties).

Furthermore, to the extent that Plaintiff asserts that Defendants should provide the modifications to Plaintiff's position as discussed in the jointly-created document between Stavale and Crokus, Plaintiff fails to show that such modifications are reasonable. In reviewing the document, numerous modifications cited in the document rely on shifting communication functions to other lifeguards or staff members on duty. Such accommodations in the Sixth Circuit have been found to be unreasonable. *See Bratten v. SSI Services, Inc.*, 185 F.3d 625, 632–33 (1999) ("Courts have continuously found that employers are not required to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability."). Therefore, the Court finds as a matter of law that Plaintiff is not "otherwise qualified" within the meaning of the ADA and has failed to prove a *prima facie* case of discrimination with respect to Defendants' wave-pool lifeguard position.

### *3. Failure to Engage in the Interactive Process*

Plaintiff also argues that Defendants' failure to engage in the interactive process with Plaintiff to determine an appropriate accommodation justifies denying Defendants' Motion for Summary Judgment. Under the ADA, in order to determine an appropriate accommodation, "it may be necessary" for the covered entity to "initiate an informal, interactive process" with the qualified individual. 29 C.F.R. § 1630.2(o)(3). Despite this seemingly permissive language, the Sixth Circuit has held that the interactive process is mandatory and requires a good faith effort by both parties.

14

*See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). When the interactive process breaks down or fails to occur, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.* (citations omitted). The Sixth Circuit follows the view that a failure to engage in the interactive process is not an independent violation of the ADA. *See Bretfielder v. Leis*, 151 Fed. Appx. 379, 386 (6th Cir. 2005). Rather, Plaintiff still must show that a reasonable accommodation was possible in order to hold Defendant liable for a violation of the ADA. *See Kleiber*, 485 F.3d at 872 n.6. As the Court discussed above, Plaintiff has failed to show that Plaintiff's cochlear implant, an interpreter/signer during only classroom instruction and staff meetings, and the suggested modifications in the jointly-created document are reasonable accommodations. As such, Defendants' failure to engage in the interactive process with Plaintiff is not a violation of the ADA.

In sum, Defendant is granted summary judgment with respect to the fact that Plaintiff is not a qualified individual that can perform the duties of a wave-pool lifeguard at Defendants' facility. Count I of Plaintiff's Complaint must be dismissed as a matter of law to the extent it claims violations under the ADA for Defendants' failure to hire Plaintiff as a wave-pool lifeguard in 2007 and 2008.

## C. *Prima Facie* Case of Discrimination with respect to Park Attendant Position

Plaintiff also claims in Count I that Defendants violated the ADA for failing to hire Plaintiff as a park attendant in 2008. As stated above, a person seeking relief under the ADA must establish the following: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *See Sullivan*, 197 F.3d

at 810.

The Court finds that Plaintiff has failed to prove the third element of his *prima facie* case. Plaintiff fails to show that he was not hired as a park attendant due to his disability. Plaintiff's application as a park attendant was accepted and placed in a pool of acceptable applications. Defendants received approximately 600 applications and had 116 open positions, which Plaintiff does not dispute. Defendants randomly pulled applications out of the application pool during the hiring process. Plaintiff's application was not one of the applications randomly pulled. According to the record, once the hiring requirements are met, Defendants do not review any more applications. As such, the Court finds as a matter of law that Plaintiff was not discriminated against due to his disability. Defendant is granted summary judgment on this claim. Having already dismissed Count I to the extent it relied on Defendants' decision to not hire Plaintiff as a lifeguard in 2007 and in 2008, Count I is entirely dismissed as a matter of law.

### B. PLAINTIFF'S REHABILITATION ACT CLAIMS (COUNT III)

Plaintiff has also asserted similar claims under the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* as a separate and distinct basis for his disability discrimination claims. By statute, the ADA standards apply to Rehabilitation Act claims of employment discrimination. *Holiday*, 206 F.3d at 642 n.1; *see* 29 U.S.C. § 794(d). As such, the Court's prior application of the ADA applies to Plaintiff's Rehabilitation Act claims. For the reasons discussed above, Defendant is granted summary judgment on Plaintiff's Rehabilitation Act claims, and Count III of Plaintiff's Complaint is dismissed.

### V. CONCLUSION

For the reasons set forth above, IT IS ORDERED that Defendants' Motion for Summary Judgment [dkt 12] is GRANTED.


IT IS FURTHER ORDERED that Plaintiff's Ex Parte Motion for Leave to File Excess Pages [dkt 31] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment [dkt 36] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

                                      S/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

Dated:  September 1, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 1, 2011.

                                      S/Marie E. Verlinde
                                      Case Manager
                                      (810) 984-3290